Good morning. May it please the Court. My name is Eitan Kasteljanich. I'm representing Denell Kelly in this matter. Kelly has been unable to work since February 2007 due to the functional effects of a combination of many physical and mental impairments, including degenerative disc disease, rheumatoid arthritis, psoriasis, ulnar neuropathy, depressive disorder, generalized anxiety disorder, obsessive compulsive disorder, and PTSD. I'd like to focus now on the ALJ's main errors that require reversal. First of all, the ALJ erred by improperly rejecting the medical opinions of Dr. Wheeler, who's a psychologist, Dr. Zaragoza, a psychiatrist, and Ms. Wagenblast, who was his treating nurse practitioner. Dr. Wheeler evaluated Kelly twice, in December 2007 and February 2009, and both times she opined that Kelly had marked and severe functional limitations. The ALJ stated that he was rejecting Dr. Wheeler's opinion because, according to the ALJ, it was unsupported by objective clinical findings and inconsistent with the evidence considered as a whole. But neither of these reasons are objective clinical findings, which support her opinion, none of which were mentioned by the ALJ. And Dr. Wheeler's opinion is, in fact, largely consistent with the opinions of Dr. Zaragoza, Ms. Wagenblast, and another psychologist, Dr. Myers, all of whom also described Kelly as having significant limitations from her mental impairments. Dr. Zaragoza evaluated Kelly in May 2010, and he opined that Kelly was unable to interact with co-workers in the public, unable to perform work activities on a consistent basis, unable to maintain regular attendance in the workplace, and unable to complete a normal work day or work week without interruptions from her psychiatric condition. He also opined that she was unable to deal with the usual work-related stress at this time. The ALJ rejected Dr. Zaragoza's conclusions because, according to the ALJ, they were inconsistent with his findings. But this analysis is not supported by substantial evidence. The ALJ failed to even discuss Dr. Zaragoza's clinical findings. Now, there weren't a lot of clinical findings, but the ones that the ALJ stated he was rejecting Dr. Zaragoza's opinion because, according to the ALJ, Kelly was less than credible, and he takes her performance at Dr. Zaragoza's evaluation as a sign of poor effort. This analysis is contrary to the Ninth Circuit's decision in Ryan, where this court held that an ALJ does not provide clear and convincing reasons for rejecting and examining a physician's opinion by questioning the credibility of the patient's complaints, where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. It's a little bit different because here I thought that the ALJ did give Dr. Zaragoza some weight, correct? Well, to say yes... That's the words used. I don't know how else to interpret them. Well, it's interesting. The statement, some weight, I'm not even sure what that means because, you know... Well, it would mean that they didn't give it no weight, right? Right. But the significant point, I guess, is he did not accept any of the limitations that Dr. Zaragoza described. So to say he's giving it some weight doesn't mean much if you basically don't accept any of the limitations. Well, he says something to the effect that the limitations Kelly does have are counted for in the RFC. So there is a reference to the limitations. Where is the error in that? If that were true, there would be no error, but it's not. Some of the limitations are addressed in the RFC, but it's not so much the ones from Dr. Zaragoza. They're from the overall record. The ALJ did accept limitations on interacting with the public, for example. But what the ALJ did not accept was that Dr. Zaragoza opined that she could not maintain regular attendance in the workplace. That does not show up in the RFC. He also did not accept his opinion about her being unable to complete a normal workday or workweek without interruptions from her psychiatric condition. So it's not that he didn't accept anything. So yes, you're correct. He didn't completely reject it. He said he's giving it some weight. But the most important and the most significant limitations described by Dr. Zaragoza, which were consistent with Dr. Wheeler's opinion, those were not included in the RFC. I'd like to jump to another important issue here, which involves Kelly's psoriasis. It's well documented in the record that she has severe psoriasis, which is very painful. Several different doctors described the lesions she had all over her body that were in various states of healing. It's not a pretty picture, and it's very painful. The ALJ did not even find that psoriasis was a severe impairment. Now, his failing to find it as a severe impairment, that's not harmful error. But his failing to incorporate into his residual functional capacity assessment the limitations related to her painful psoriasis, that's the harmful error here. In addition, Kelly was evaluated by a doctor, Dr. Deem, in July 2007. Dr. Deem found that due to her arthritis and her back pain, she was limited to only occasional bending, grasping, and fingering. Those limitations do not show up in the residual functional capacity assessment, and the ALJ does not explain why he does not include them in the RFC. Finally, once Kelly's back pain was getting worse, she was referred to a neurosurgeon, Dr. Lange. He began treating her in May of 2010. After examining her three times and reviewing her MRI, he diagnosed her with lumbar spondylosis at two levels, with possibly at a third level. He also is one of the doctors who noted the presence of severe psoriasis with numerous plaques all over her body. Well, the ALJ does not mention Dr. Lange by name, and he does not discuss any of his clinical findings. Now, the significance of that dovetails into the ALJ's analysis of Kelly's testimony, because the ALJ rejected Kelly's testimony in part because supposedly the treatment record does not fully corroborate her testimony. But if you don't mention the most significant clinical findings that support her testimony, it's not fair to conclude that her testimony is not corroborated by medical evidence. I should mention, too, that during the time between briefing this case and argument, and I put this in my 20AJ letter, Marsh was issued by this court. Under Marsh, the ALJ's failure to discuss Dr. Lange's clinical findings is reversible error. In addition, Social Security recently issued a Social Security ruling, 16-3-P, which talks about how an ALJ is not to make an overall credibility finding, but must instead explain which particular testimony he is rejecting and why. Interestingly, 16-3-P actually is very consistent with the Ninth Circuit's rulings, and Ninth Circuit law, for example, in Burrell, the language is very similar. And Social Security ruling 16-3-P did not change the law. It merely clarified the law, and it actually says in the ruling, so that they would more closely follow our regulatory language regarding symptom evaluation and to be consistent with our regulations. Was that before the district court? It was not, because Social Security ruling 16-3-P was only issued, I believe, in March. And it obviously was not before the ALJ, but because it's merely a clarification, that's, I think, the legal standard that this court should be looking at on whether or not the ALJ properly evaluated Kelly's testimony. What difference does it make? I'm sorry? If it had been taken into account, what would have been done differently? I just want to understand what you're asking. Well, you know, it's interesting. When you read the ALJ's decision, it appears that he basically came up with a few reasons, global reasons, and then said, I basically find her overall not to be credible because of these large global reasons. But he never specified which specific testimony he was rejecting and why. Instead, it was more of an overall global thing. Well, that's not acceptable under, actually it wasn't acceptable under the predecessor ruling, 96-7-P. It's not acceptable under Ninth Circuit Law, and now it's not 19-3-P. He needs to actually link his credibility analysis to which particular testimony is inconsistent with which particular evidence. And, of course, his analysis of that was flawed because he didn't discuss the medical evidence that supported her claim. Instead, just ignored a fair amount of it. Finally, the ALJ also failed to give proper weight to the lay evidence from Kelly's sister, who provided a testimony that showed that Kelly was indeed as limited as she was describing, and also described the help that Kelly required in caring for her children. That was one of the reasons the ALJ gave for rejecting Kelly's testimony, is that she had, I believe it's five children, but some of the children were older, and there was testimony both from Kelly and from her sister that the older children were helping care for the younger ones. Finally, because of all of these other errors, the ALJ's RFC is not supported by substantial evidence. It's also based on legal error, and if the evidence which the ALJ improperly discredited were fully credited, it can only support a finding of disability. I now ask that any additional time I have be reserved for rebuttal. Good morning, Your Honors. May it please the Court, I'm David Burdett, appearing on behalf of the Commissioner, Carolyn Colvin. With regard to Social Security Ruling 16-3P, as Judge Davis indicated, that was not, of course, before the District Court. It was only issued in March, and it has an effective date by its own terms of March 16, 2016. So that was not before the ALJ in 2012, obviously. There is a bit of a distinction between 16-3P and the predecessor ruling, 96-7P, and I think that the actual reason that 16-3P was issued was because there was a felt need on the part of the administration to emphasize that going forward, credibility analysis was not to be undertaken by the ALJs in a sort of litigation style manner. A general evaluation of people's credibility because of bad character or the like. Now, to what extent that's been happening in reality, I don't know. I don't think it happened in this case. I think it happened because of factors that the ALJ looked at in the record. But the point I'm getting at is that there is actually a distinction between the 16-3P regime and the predecessor regime that is not effective on this case because the ALJ made its decision in 2012. With regard to the opinions of Dr. Zaragoza, as Judge McEwen said, Dr. Zaragoza was cited by the ALJ, and the ALJ did say that he gave some weight to Dr. Zaragoza's observations. The ALJ said the observations are instructive. The ALJ didn't give full weight to Dr. Zaragoza because the conclusions that Dr. Zaragoza came to were at odds, in the ALJ's view, with Dr. Zaragoza's observations. That's the answer to the problem of what is to be done with Dr. Zaragoza's opinion. And that's the distinction between this case and the Ryan case where the ALJ just said, no weight whatsoever. The plaintiff, excuse me, Ms. Kelly, did not cooperate with Dr. Zaragoza, said she didn't want to be there. Or Dr. Zaragoza inferred that she didn't want to be there from her short-clipped answers. Dr. Zaragoza observed that her memory was only slightly impaired, that she was fully in a matter of less than 12 months, or I believe it was 12 months or less, he anticipated that she would improve with treatment. Well, of course, an impairment that can be improved with treatment is not disabling, and an impairment that doesn't last for at least 12 months is not disabling under the Social Security Act. With regard to the limitations of psoriasis, the ALJ did observe, I believe, that Dr. Deem observed some symptoms of psoriasis, but I don't think there's been a showing that any limitations that she would have, that Ms. Kelly would have incurred due to having the impairment of psoriasis would have impacted her in any way that limited her residual functional capacity beyond what the ALJ found. With regard to the opinion of Dr. Lange, I have to concede that that was error. That was error by the ALJ to not reference that opinion. That's error. You've also conceded the discussion with respect to Dr. Mayer's was error. That's true. Two errors, although the ALJ did at least discuss Dr. Mayer's opinion, so we know that he read and thought about it, but the ALJ didn't clear up the weight that he was giving to Dr. Mayer's ultimate conclusions. So what do we do with that? I think it's a harmless error, and here's why. Let's see what I can find about what Dr. Mayer was referred to. The ALJ noted that, I'm not going to go into detail, but the ALJ noted that she could perform serial sevens for Dr. Mayer's, that she didn't have any suicidal or psychotic ideation that Dr. Mayer's observed, that her thoughts were generally organized and logical, that she had a pretty good fund of information, and that she diagnosed panic disorder with agoraphobia, PTSD, cocaine dependence and remission, dysthymia, alcohol dependence and remission, and OCD-related features. I think that that is harmless because the ALJ found that she had the severe impairments of depressive disorder, generalized anxiety disorder and alcoholism, and that's a fair summation of what Dr. Mayer's assesses her with. With regard to Dr. Lange on the physical, at 674 and 687, those are Dr. Lange's key observes that she has giveaway weakness, in other words, the kind of somatoform or quasi-somatoform symptomology where a person is tested physically and, you know, no resistance and then, oh, ow, that part of the body gives way. There is not a lot there in Dr. Lange's opinion to credibly assert that she has more physical limitations, I think, than, again, what the ALJ found for her in the residual functional capacity. So I would say that that's an error, but it is certainly an error, but I think it's a harmless error. I think that it was inconsequential to the ultimate disability determination, and that's the standard that we've had, and it's the standard that I think is carried forward in the Marsh case from last year. Does the Court have further questions? I think not. With no more, then I'll close by requesting that the case be affirmed. Thank you, Your Honor. Let me start by addressing the harmfulness of the errors involving Dr. Myers. Dr. Myers did not state a very clear opinion about the extent of Kelly's limitations. That's a given. But what she did find, her clinical findings are interesting because they're consistent with the opinions of Dr. Wheeler and Dr. Zaragoza. In other words, her clinical findings provide further support for the validity of those opinions. Dr. Myers also, and this is not mentioned by the ALJ, Dr. Myers observed that Kelly was having a panic attack at her evaluation. So she had a clinical observational basis for concluding that Kelly had some significant problems. With regard to Dr. Lange, there's several different harmful errors involved in failing to address that evidence. One, for starters, is he found that she had positive Tynell's and Phelan's tests, which indicates manipulative limitations. There are no manipulative limitations in the ALJ's residual functional capacity assessment. Those findings, I guess, are further support for Dr. Deem's opinion that she had manipulative limitations, which, once again, were not included in the residual functional capacity assessment. Dr. Deese. So let me just cut to what's troubling me here. The ALJ didn't conclude that she was 100% great. The ALJ just concluded that she wasn't disabled and that she could do less than the full range of light work, but that she could work. Our standard is substantial evidence. Granted, a number of the people who saw her said that she had limitations, but the ALJ seemed to take them into account. So what is the strongest argument that his decision—I guess it's a he—was not supported by substantial evidence? I think the strongest argument is his failure to include the manipulative limitations that are described by Dr. Deem and then somewhat confirmed by Dr. Lange, who, of course, none of that was mentioned by the ALJ. Dr. Lange's opinion wasn't. Because Dr. Deem's opinion that Kelly could only bend, grasp, and finger occasionally, those are very significant limitations which were not included in the RFC, and I think that's why the RFC is not supported by substantial evidence. The other big issue is the rejection, I think, of Dr. Wheeler's opinion, which was very clear that she had very significant mental functional limitations, and those don't show up in the residual functional capacity assessment. And if those limitations were there, then it's a different situation. That's, I think, the big harmful errors here. Okay. All right. Thanks very much. Thank you both for your argument this morning, Kelly v. Colvin is now submitted and we're adjourned for the morning.
judges: Schroeder, McKeown, Davis